**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TUNG THANH NGUYEN TRUONG,<br><br>                    Petitioner,<br><br>          v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>                    Respondents. | Case No. 2:26-cv-03546-MBK<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

Tung Thanh Nguyen Truong, a native and citizen of Vietnam, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Nguyen immigrated to the United States as a child in 1982, after his family fled Vietnam. He is subject to an order of removal that became administratively final on April 16, 1997. After his removal proved impracticable, he was released from the custody of DHS under an order of supervision ("OSUP"). For the past thirty years, Mr. Nguyen settled in the

United States with his family, including his wife and children, and remained in full compliance with his conditions of supervision.

On April 2, 2026, Mr. Nguyen reported for his scheduled Immigration and Customs Enforcement ("ICE") check-in appointment at the Santa Ana Field Office. At the appointment, ICE officers suddenly arrested Mr. Nguyen without notice or an opportunity to explain why he should not be detained. He was later transferred to the Adelanto Detention Facility.

In this habeas action, Mr. Nguyen claims that his re-detention violates 8 C.F.R § 241.13 because the Government cannot show that there is a significant likelihood of his removal in the reasonably foreseeable future. He also argues that the Government failed to follow the proper procedures— including notice, an informal interview, and an opportunity to be heard— before revoking his OSUP. Based on these alleged violations, he asks the Court to issue a writ of habeas corpus requiring his immediate release from custody. Respondents contend that Petitioner's removal is reasonably foreseeable because, under a 2020 Memorandum entered into between Vietnam and the United States, Vietnam will now accept the repatriation of some of its citizens who immigrated prior to 1995. Respondents also argue that, even if DHS improperly revoked Petitioner's OSUP, the appropriate remedy is not release from detention.

The Court concludes that Petitioner is entitled to habeas relief. Respondents have failed to demonstrate that there is a reasonable likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future and, it follows, that his ongoing detention is authorized by Section 1231. The Court also finds that Respondents violated applicable immigration regulations by revoking Petitioner's OSUP without providing notice or an interview. Accordingly, the Court orders that the Petition be granted, Petitioner be

2

released immediately, and Respondents be prevented from re-detaining Petitioner without notice and a meaningful opportunity to be heard.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Tung Thanh Nguyen Truong is a native and citizen of Vietnam who entered the United States on September 14, 1982. Dkt. 1 at 6. He was 11 years old when he and his family fled war-torn Vietnam and settled in Garden Grove, California. *Id.* He became a lawful permanent resident the following year. *Id.* On October 19, 1992, Mr. Nguyen pled guilty in Orange County Superior Court to several charges related to a robbery he and others had committed. *Id.* He was sentenced to seven years in prison. *Id.*

On March 16, 1993, DHS commenced removal proceedings against him. *Id.* at 7. His order of removal became administratively final on April 16, 1997. *Id.* At that time, Vietnam did not accept deportees from the United States who had arrived in the United States before July 12, 1995. *Id.* As a result, Mr. Nguyen was released from ICE custody on an OSUP. *Id.*

Since his release 29 years ago, Mr. Nguyen has remained at liberty, complied with all conditions of his supervised release, and has not sustained any criminal convictions. He married his high school sweetheart and together they raised three children, who are United States citizens. *Id.* He found work at a machine shop and advanced through the ranks to machine shop operator and eventually inspector. *Id.* He also worked for many years as an inspector at a local aerospace company, but his employer reluctantly laid him off in early 2025 during the ICE raids in Southern California. *Id.*

At the time of his re-detention, Mr. Nguyen was a *pro bono* client of the Criminal Justice Clinic at the UC Irvine School of Law and Sophie Paeng, a private attorney, who represented him in seeking post-conviction relief in

Orange County Superior Court. *Id.* On March 6, 2026, the Orange County Superior Court vacated the felony convictions that provided the grounds for Mr. Nguyen's deportation order. *Id.* Ms. Paeng now represents Mr. Nguyen in connection with a motion to reopen his removal proceedings in immigration court. *Id.* at 7-8.

Despite decades of compliance with the terms of his OSUP, Petitioner was suddenly arrested by ICE when he reported for his regular ICE-check in interview on April 2, 2026. *Id.* at 8. Ms. Paeng, who had accompanied Petitioner at the check-in, asked the ICE officer why Petitioner was being detained. *Id.* The ICE officer responded that "circumstances have changed," pointed to the language at the bottom of the Notice of Revocation Release given to Mr. Nguyen, and mentioned his removal order from 1997. *Id.*

Petitioner filed the instant habeas petition on April 3, 2026. Dkt. 1. He alleges that (1) the Government has not shown that his removal is reasonably foreseeable such that his ongoing detention is authorized by 8 U.S.C. § 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2) his re-detention without notice or an opportunity to be heard violates procedural due process and immigration regulations applicable to revocation of an OSUP. *Id.* at 15-19. Petitioner requests that the Court (1) order his immediate release, (2) reinstate his OSUP with the same conditions in place at the time of his re-detention; (3) order the return of all property confiscated from Petitioner at the time of his arrest and during processing; (4) enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for removal; and (5) enjoin Respondents from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulatory procedures. *Id.* at 19-21.

4

Respondents filed their response on April 10, 2026. Dkt. 10. They contend that, based on a change in United States-Vietnamese relations, Petitioner's removal is reasonably foreseeable. *Id.* at 2-5. Respondents also argue that, even if Petitioner's OSUP was improperly revoked without notice or an interview, the appropriate remedy is not release from detention. *Id.* at 6-9. Petitioner filed his reply on April 12, 2026. Dkt. 9.

The Court held a video hearing on April 14, 2026. At the hearing, Respondents' counsel informed the Court that the Government made a request for travel documents from Vietnam on April 8, 2026. Respondents' counsel also confirmed that Petitioner had not received the notice or post-custodial interview required by the regulations.

## II.    DISCUSSION

The Court begins by reviewing the legal and factual background relevant to Petitioner's claims, including the United States' complicated history of repatriations to Vietnam. The Court then addresses Petitioner's claims on the merits. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has not shown a significant likelihood of his removal in the reasonably foreseeable future and because it revoked his OSUP without providing adequate notice, an interview, or an opportunity to be heard.

### A. Legal and Factual Background

### 1.  Detention and Release under Section 1231.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i)

The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

8 C.F.R. §§ 241.4 and 241.13 implements the Government's authority to detain or release noncitizens under 8 U.S.C. § 1231(a). Section 241.4, titled "Continued detention of inadmissible, criminal, and other [noncitizens]

beyond the removal period," sets out "procedures DHS must follow to impose continued detention." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 241.13, titled "Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future," includes procedures that implement the *Zadvydas* burden-shifting framework. *Id*. Sections 241.13(g)(1) and 241.13(h) provide that the Government "shall" release a noncitizen on an "order of supervision" if it determines that their removal is not reasonably foreseeable, unless "there are special circumstances justifying continued detention."

The regulations also specify the procedures for the Government to re-detain noncitizens released on an OSUP. Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them if they violate their conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2); *see also Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3, (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)....").

Section 241.13(i)(2) provides that "[t]he Service may revoke an alien's release ... and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608,

619-20 (1st Cir. 2023)).

### 2. Repatriation of Vietnamese Immigrants Ordered Removed from the United States

This case implicates the United States' complex history with Vietnam and the countries' evolving diplomatic agreements over the past few decades. Drawing on the extensive record developed in *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020), the Court briefly traces that history to provide context for the parties' current dispute about whether Petitioner's removal to Vietnam is reasonably foreseeable.

After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam ("Vietnam"). Around that time, waves of people from the former Republic of Vietnam (South Vietnam) fled the country to escape political persecution. Under various humanitarian programs, the United States accepted hundreds of thousands of Vietnamese refugees, including Petitioner. *Id.* at 1083 (citations omitted).

Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. In 2008, the United States and Vietnam reached a diplomatic agreement under which Vietnam agreed to start considering repatriation requests for certain Vietnamese immigrants. Specifically, the agreement obligated Vietnam to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. The agreement also provided that Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995. Relying on this provision, Vietnam maintained its policy of non-repatriation for pre-1995 Vietnamese immigrants after signing the 2008 agreement. *Id.* (citations and quotations omitted).

Prior to 2017, ICE maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them. Accordingly, ICE adopted a policy of not detaining pre-1995 Vietnamese immigrants for longer than ninety days after their removal orders became final. After ninety days, ICE generally released them into the community on an OSUP. *Id.* (citations and quotations omitted).

In 2017, ICE entered into negotiations with Vietnam that were aimed at amending the 2008 Agreement and developing a new policy that would allow for pre-1995 Vietnamese immigrants to be repatriated. These negotiations were somewhat successful. Although the 2008 agreement was not officially amended, Vietnamese officials verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them. *Id.* (citations omitted).

After receiving this verbal commitment in 2017, ICE departed from its longstanding practice of releasing pre-1995 Vietnamese immigrants with final orders of removal after ninety days of detention. Instead, it began detaining them for more than ninety days based on the possibility that Vietnam might issue the requisite travel documents. ICE also began re-detaining some pre-1995 Vietnamese immigrants who had previously been released on OSUPs. *Id.* at 1083-84 (citations omitted).

On August 6, 2018, ICE met with Vietnamese officials again to continue discussions about the status of pre-1995 Vietnamese immigrants. After that meeting, ICE reversed its position again. ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely. In October 2018, ICE instructed field offices to resume the

practice of releasing pre-1995 Vietnamese immigrants within 90 days of a final order of removal. *Id.* at 1084 (citations omitted). Between 2017 and 2019, ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times, but Vietnam granted those requests only 18 times. *Id.* at 1087-88. The Government was forced to release many of those detainees in 2018. *Id.* at 1088.

In 2020, the United States secured a Memorandum of Understanding with Vietnam ("Memorandum"), which created a process through which the Vietnamese government could consider some pre-1995 Vietnamese immigrants for removal. The Memorandum limited consideration to persons meeting certain criteria, but many of these criteria are not publicly available. *See Nguyen v. Scott*, 729 F. Supp. 3d 703, 715 (W.D. Wash. 2025). When an immigrant qualifies, the Memorandum provides only that Vietnam has "discretion whether to issue a travel document," which it exercises "on a case-by-case basis." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025).

In the post-Memorandum era, Vietnam has overwhelmingly declined to issue travel documents for pre-1995 immigrants. Quarterly reports that ICE agreed to submit as part of the *Trinh* class action settlement showed that between September 2021 and September 2023, only four Vietnamese immigrants who came to the United States before 1995 were given travel documents and deported.[1]

On June 9, 2025, the current administration rescinded ICE's policy of generally finding that pre-1995 Vietnamese nationals were not likely to be

---

[1] See Asian Law Caucus, *Resources on Deportation of Vietnamese Immigrants Who Entered the U.S. Before 1995*, (Jul. 15, 2025), available at https://www.asianlawcaucus.org/news-resources/guides-reports/trinh-reports (last visited Apr. 14, 2026) (providing links to the quarterly reports).

removed in the reasonably foreseeable future. *See Nguyen*, 729 F. Supp. 3d at 715.

## B. Respondents Have Not Demonstrated that Mr. Nguyen may be Removed in the Reasonably Foreseeable Future

With this background in mind, the Court now turns to Petitioner's habeas claims, beginning with Petitioner's claim that he is entitled to release because the Government has not demonstrated that his removal is reasonably foreseeable. Dkt. 1 at 11-15.

### i.    The Government Bears the Burden to Show Petitioner's Removal is Likely in the Reasonably Foreseeable Future

The parties dispute the legal framework that applies to Petitioner's claim that his removal is not reasonably foreseeable. Respondents argue that his claim is subject to the ordinary *Zadvydas* burden-shifting framework, under which the noncitizen has the initial burden to show that their removal is not reasonably foreseeable. *Zadvydas*, 533 U.S. at 701. Petitioner claims, instead, that the regulation governing revocation of release, 8 C.F.R. § 241.13(i)(2), places the burden on the Government to demonstrate a significant likelihood that his removal is reasonably foreseeable to authorize his re-detention.

This Court agrees with Petitioner, and the weight of authority in this District, that the Government bears the burden to demonstrate that Petitioner's removal is reasonably foreseeable to lawfully revoke his OSUP and re-detain him. *See Nguyen v. Marin*, 5:26-cv-01130-JFW-MAR, 2026 WL 822535, at *3 (C.D. Cal. Mar. 20, 2026); *Truong v. Lyons*, 5:26-cv-00021-AS, 2026 WL 855150, at *6 (C.D. Cal. Mar. 20, 2026); *Pham v. Marin*, 5:26-cv-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026); *Espada v. Doe*, No. 5:25-cv-02983-JWH-KES, 2026 WL 181539, at *3-4 (C.D. Cal. Jan.

20, 2026), *adopted*, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); *Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, (C.D. Cal. Nov. 3, 2025); *El Abed v. Noem*, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4 (C.D. Cal. Oct. 28, 2025).

Section 241.13(i)(2) authorizes the Government to revoke a noncitizen's OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." While the regulation does not expressly state that the Government bears the burden to show a significant likelihood of removal, the legal context in which it was adopted and principles of statutory interpretation compel that result.

As discussed above, Section 241.13 was promulgated to implement the Supreme Court's decision in *Zadvydas*. *See Johnson*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court instructed that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the Government cannot rebut the noncitizen's showing, then the noncitizen's detention is "no longer authorized by statute" and they must be released "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699-700.

Section 241.13 codifies this burden-shifting framework. It first provides procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release on an OSUP. *See* 8 C.F.R. § 241.13(d)-(g). It then provides authority for DHS to revoke a noncitizen's

12

OSUP and re-detain them where they violated the terms of their release or "changed circumstances" establish that their removal is now reasonably foreseeable. *Id.* § 241.13(i)(1)-(3).

The provision authorizing revocation of an OSUP based on "changed circumstances," Section 241.13(i)(2), therefore only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); *id.* at § 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not significantly likely in the reasonably foreseeable future"). This means that noncitizens subject to revocation of their OSUP have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To be consistent with *Zadvydas*, then, Section 241.13(i)(2) must be construed to place the burden DHS to "rebut" that showing by demonstrating there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future "on account of changed circumstances."

To the extent there is any ambiguity, principles of statutory construction support this reading of the regulation. "Absent specific statutory or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the 'default rule' that the burden falls on the party who 'generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion.'" *Roble v. Bondi*, 803 F. Supp. 3d 766, 773 (D. Minn. 2025) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

This reading also avoids the serious constitutional concerns posed by the Government's position. *Zadvydas* construed Section 1231(a) not to authorize detention where removal is not reasonably foreseeable because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As multiple courts have observed, the Government's reading of Section 241.13(i)(2) would raise similar concerns by placing the burden on the noncitizen to demonstrate they should be released when the Government made the unilateral determination that the noncitizen's prior showing—that their removal was not reasonably foreseeable and therefore their detention potentially indefinite—was no longer sufficient. *See Luu*, 2025 WL 3552298, at \*6 ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*."); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at \*3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."). Construing Section 241.13(i)(2) to place the burden on the Government is not only most faithful to the text and its context, but would also avoid these serious constitutional concerns. *See generally Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004) (applying canon of constitutional avoidance to construe regulation).

The Court therefore concludes that "'[t]he burden-shifting framework

14

from *Zadvydas* does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released on an' OSUP." *Espada*, 2026 WL 181539, at *5 (quoting *Yan-Ling X. v. Lyons*, No. 25-cv-01412-KES-CDB, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025)). "Under section 241.13(i)(2), when ICE revokes release to effectual removal, it is *ICE's burden* to show a significant likelihood that the alien may be removed." *Id.* (cleaned up) (emphasis in original).

### ii. Respondents Have Not Met Their Burden

The Court proceeds to determine whether Respondents have met their burden under the regulation to demonstrate "changed circumstances" such that Petitioner's removal is reasonably foreseeable and his re-detention was authorized.

Respondents submitted no evidence with their Answer to demonstrate that removals of pre-1995 Vietnamese immigrants are likely in general or that the Government is likely to remove Petitioner in particular. Instead, Respondents argue that Petitioner's removal "is now affirmatively likely" as pre-1995 Vietnamese immigrants are "now routinely removed to Vietnam" based on the 2020 Memorandum. Dkt. 8 at 4. In support of their position, Respondents cite several habeas cases in this District that were mooted by the removal of the Vietnamese petitioners. *Id.* at 4-5. But the fact that the Government has been able to remove *some* pre-1995 Vietnamese immigrants does not show that there is a significant likelihood of *Petitioner's* removal in the reasonably foreseeable future. *See Bui*, 2025 WL 4061564, at *3 ("evidence that others have been removed, without a specific comparison to Petitioner's case, do little to show that Petitioner, himself, is likely to be removed in the reasonably foreseeable future"). As discussed above, the 2020 Memorandum provides Vietnam with discretion to determine which individuals it will accept

15

on a case-by-case basis and Government reports indicate that Vietnam has agreed to repatriate relatively few of its citizens since 2020.

Respondents provide no statistics or other evidence regarding how often the Government has requested and received travel documents from Vietnam, and no information about whether the people for whom it has received travel documents are pre-1995 immigrants and otherwise similarly situated to Petitioner. *See Espada*, 2026 WL 181539, at *5 (finding that the Government had not met its burden to show that removal was reasonably foreseeable because it did not provide statistics on the "the total number of [travel document] requests that were made to Vietnam" or how many Vietnamese removals involved pre-1995 Vietnamese immigrants). Absent such information, the 2020 Memorandum is not by itself sufficient to show a changed circumstance or a significant likelihood of Petitioner's removal. *See Id.*; *Quan v. Bowen*, No. 5:25-CV-02546-HDV-PVC, 2025 WL 3691858, at *4-5 (C.D. Cal. Nov. 14, 2025); *Bui*, 2025 WL 4061564, at *3; *Nguyen*, 788 F. Supp. 3d at 151.

At the April 14, 2026, hearing, Respondents' counsel informed the Court that ICE had initiated the process of requesting travel documents from Vietnam on April 8, 2026. Even assuming that Respondents provided competent evidence to support this assertion, it is insufficient to meet Respondents' burden under 8 C.F.R. § 241.13(i)(2). *See, e.g.*, *Quan*, 2025 WL 3691858, at *5 (finding the Government had not met its burden where "only evidence and argument as to the likelihood of Petitioner's reasonably foreseeable removal is that it requested his travel documents"); *Pham*, 2026 WL 712946, at *4 (same); *Nguyen*, 788 F. Supp. 3d at 152 (same). The fact that the Government requested travel documents from Vietnam does not say anything about whether Vietnam is likely to issue them, which is the critical

issue here. "At best, the government has demonstrated a 'mere possibility that removal will occur,' which is insufficient to carry its burden of showing a 'significant likelihood' of removal." *Pham*, 2026 WL 712946, at *4 (quoting *Yan-Ling X.*, 2025 WL 3123793 at *4).

In sum, given the low rates at which Vietnam issues travel documents for pre-1995 immigrants to the United States, the non-public availability of the criteria Vietnam uses to makes its decisions on repatriation of such individuals, and the fact that Respondents have merely requested, but not actually secured, travel documents for Mr. Nguyen, the Court cannot conclude that Respondents have met their burden under 8 C.F.R. § 241.13(i)(2).

## C. Respondents Did Not Comply with Procedures to Revoke Petitioner's OSUP

Petitioner's second cause of action alleges that Respondents failed to follow the required procedures for revoking his OSUP—namely notice, an interview, and an opportunity to contest the basis for revocation. Dkt. 1 at 15-19.

When the Government revokes a noncitizen's OSUP based on its determination that there is a significant likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be: (1) "notified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id*. Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for

revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

At the April 14, 2026, hearing, Respondents' counsel confirmed that Respondents do not dispute that Petitioner was not afforded the notice, interview, and opportunity to be heard required by Section 241.13(i)(3). Although Petitioner was handed a form notice stating that his release has been revoked because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and that "ICE is seeking a travel document to effect [his] expeditious removal to Vietnam," (Dkt. 1-2 at 1-2), it did not provide any specific information about what "circumstances had changed" or why the Government believed Petitioner's removal was now reasonably foreseeable.[2]

"[C]ourts in this district and across the country have held that such vague, boilerplate statements are insufficient notice." *Gutnik v. Pamela Bondi et al.*, No. 5:26-cv-00908-WLH-ACCV, 2026 WL 700546, at *2 (C.D. Cal. Mar. 5, 2026) (collecting cases). *See also Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 778, 787 (D. Minn. 2025) (finding notice that decision was made "based on a review of your file ... on account of changed circumstances in your case" because "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case" to be "not enough," because "Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond"); *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) (finding "completely conclusory statement" that

---

[2] Assuming that Respondents' counsel correctly represented that the Government did not submit a travel document request until April 8, 2026, it appears the notice's statement that "ICE is seeking a travel document" was false.

18

revocation was "based on a review of your file ... on account of changed circumstances in your case" "fail[ed] to reflect consideration of any of the required factors under 8 C.F.R. § 241.13(f)"); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025) (finding notice that decision was "based on a review of your case; your existing order of removal; and a determination that there is a significant likelihood of your removal in the reasonably foreseeable future" "defective").

Petitioner was also not afforded any informal interview or a meaningful opportunity to be heard why he should not be detained. When the ICE officer notified Petitioner that his OSUP would be revoked, his pro bono attorney, Ms. Paeng, provided the ICE officer with a copy of the March 6, 2026, state court order vacating Petitioner's convictions that led to his removal order and a letter of representation explaining that she was representing him in filing a motion to reopen his immigration proceedings. Dkt. 1-1 at 4. But the ICE officer did not address Ms. Paeng's argument that Petitioner's detention and removal were no longer warranted or otherwise explain the basis for its determination that Petitioner's OSUP would be revoked. *Id*. ICE therefore "essentially bar[red] the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful." *Kiwana v. LaRose*, No. 3:25-cv-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026). The result is that Petitioner was "depriv[ed] of any 'meaningful opportunity' for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom." *Minassi v. Noem*, No. 5:26-cv-00723-RGK-AYP, 2026 WL 923289, at *7 (C.D. Cal. Apr. 1, 2026).

While Respondents do not dispute that they failed to provide Petitioner with the notice or interview required by Section 241.13(i)(3), they argue that "the appropriate remedy for any procedural deficiency would not be an

19

automatic release from custody, but rather to remedy the specific procedural deficiency that might be established," citing several cases in which courts have ordered ICE to provide notice and an interview for violations of Section 241.13(i)(3). *See* Dkt. 8 at 5-8. However, a "growing number of courts . . . have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release." *Nguyen v. Noem*, No. 8:25-cv-02654-HDV-DSR, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (collecting cases).

The Court agrees with the latter cases that release is an appropriate remedy for Respondents' regulatory violations. The purpose of the regulations—notice, an interview, and an opportunity to be heard—is to ensure that the Government does not wrongly revoke a noncitizen's OSUP and deprive them of their liberty. Because Petitioner has been prejudiced by the denial of these protections, Petitioner should be returned to the "status quo," which is "is Petitioner's release on his [] OSUP before his current re-detention." *Nazarian*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Cruz v. Rios, et al.*, No. 26-01374-cv-MWF-DSR, 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (same); *Bolandi v. Noem*, No. 5:26-CV-00628-MCS-AGR, 2026 WL 485764, at *3 (C.D. Cal. Feb. 19, 2026); *Hoang v. Noem*, No. 25-cv-3177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (same). *See also Esmail*, 2025 WL 3030590, at *9 ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-

detained without any measure of due process.").

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner, subject to the conditions of his prior OSUP, and return all property confiscated from him during his arrest and processing into detention; (3) Respondents may not re-detain Petitioner unless they have obtained a travel document for his removal and provided him adequate notice, an interview, and an opportunity to be heard; and (4) Respondents shall file a status report within seven (7) days to confirm that Petitioner has been released from custody.

Dated: April 15, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

21